Max Moskowitz
Ariel Peikes
OSTROLENK FABER LLP
845 Third Avenue
New York, New York 10022
mmoskowitz@ostrolenk.com
apeikes@ostrolekn.com
Telephone: (212) 382-0700
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIFE STYLE FUTON, INC., and EASY FIT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EASYFIT SLIPCOVER, LTD., ILYASS ET TAHIRI, TUCOWS, INC., TUCOWS.COM CO., and CABREXA, LLC, and the domain names: **www.easyfitcover.com, www.easyfitslipcover.com,** and **www.easyfitslipcover.co**, *in Rem*. <br><br> Defendants. | Index No.: 1:21-cv-01482-GHW |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR A

## PRELIMINARY INJUNCTION

{02622936.1}

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      PRELIMINARY STATEMENT………………………………………………..1

II.     FACTUAL BACKGROUND……………………………………......................3

III.    ARGUMENT………………………………….................................................4

   1.  Plaintiffs are Entitled to a Preliminary Injunction and Restraining Order Prohibiting
Further Scams and Confusion from the Identical, Infringing Domains……………...4

     A. Legal Standard for Preliminary Injunction………………………………………4

     B. Easy Fit Company Has a Likelihood of Success on the Merits of its
Trademark Infringement Claims……………………………………………………4

     C. Defendants' Conduct Has Caused Demonstrable Confusion and Will
Continue to Cause Confusion Amongst the Consuming Public…………………5

        i.   The EASY FIT SLIPCOVER Mark is Conceptually and
Commercially Strong and is Recognized by Consumers…………………7

        ii.  The Second Polaroid Factor: Defendants Reproduced the EASY
FIT SLIPCOVER Mark in Its Entirety……………………………………8

        iii. The Third Polaroid Factor: Defendants Sell the Same Products that
Easy Fit Company is Widely Known for Selling…………………………8

        The Fourth Polaroid Factor: There is No "Gap" to Bridge………………9

        iv.  The Fifth Polaroid Factor: Defendants Actually Confused Customers
into Believing that Purchased Bedding and Furniture Cover Products
Were From Plaintiffs, when the Products had In Fact been Sold by
Defendants……………………………………………………………..9

        v.   The Sixth Polaroid Factor: Defendants are using the EASY FIT
SLIPCOVERS Mark in Bad Faith………………………………………10

        vi.  The Seventh Polaroid Factor: Defendants' Use of the EASY FIT
SLIPCOVER Mark Jeopardizes Irreparably the Reputation of the
Plaintiffs and Plaintiffs' Mark…………………………………………...12

        vii. The Eighth Polaroid Factor: Since the Price Point is below

$50 per Cover (and sometimes considerably less) for Plaintiffs' and Defendants' Products Even Normally Prudent Purchasers Might be Misled to Believe that the Defendants' Products are Genuine Easy Fit Company Covers………………………………………………………12

viii.     All of the Polaroid Factors Strongly Favor The Easy Fit Company………………………………………………………………..……..13

D.  Easy Fit Company Has a Likelihood of Success on the Merits of its ACPA Claim……………………………………………………………..13

i.   The Infringing Domains are identical and confusingly similar to Plaintiffs' trademark such that they should be transferred to Plaintiff…..14

ii.  The Infringing Domains are identical and confusingly similar to Plaintiffs' trademark such that they should be transferred to Plaintiff..…14

iii. The Defendants' Infringing Domains are being used with a "bad faith intent to profit" from the EASY FIT SLIPCOVER trademark…………15

E.  Plaintiff Will Suffer Immediate and Irreparable Injury and Has No Adequate Remedy…………………………………………………………16

F.  The Equities Clearly Balance in Favor of Plaintiffs, Warranting the Issuance of a Preliminary Injunction……………………………………………...17

G.  The Public Interest Will Not Be Harmed by the Issuance of the Requested Injunction………………………………………………………………..18

2.  Plaintiffs Sufficiently Put the Defendants On Notice of their Infringing and Damaging Activities, and the Defendants Have Had, And Continue to Have, the Ability to Stop the Infringing and Damaging Activities………………………..19

3.  Security…………………………………………………………………...21

IV.     CONCLUSION…………………………………………………………..21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.,*
    537 F.2d 4 (2d Cir. 1976) …………………………………………………………..7

*A.V.E.L.A.,Inc. v. Estate of Marilyn Monroe, LLC,*
    131 F. Supp. 3d 196 (S.D.N.Y. 2015)…………………………………………………5

*Atlas Copco AB v. atlascopcorian.com,*
    533 F. Supp. 2d 610 (E.D. Va. 2008) …………………………………………..17-18

*Cadbury Beverages, Inc. v. Cott Corp.,*
    73 F.3d 474 (2d Cir. 1996) …………………………………………………………8

*CJ Products LLC v. Snuggly Plushez LLC,*
    809 F. Supp. 2d 127 (E.D.N.Y. 2011) …………………………………………....4, 14

*Christian Louboutin, S.A. v. Yves Saint Laurent America Holdings, Inc.,*
    696 F.3d 206 (2d Cir. 2012) ………………………………………..…………7

*Coty Inc. v. Excell Brands, LLC,*
    277 F. Supp. 3d 425 (S.D.N.Y. 2017) …………………………………………..12

*Davidoff & Cie, S.A. v. PLD Int'l Corp.,*
    263 F.3d 1297 (11th Cir. 2001) …………………………………………………18

*Dress for Success Worldwide v. Dress 4 Success,*
    589 F. Supp. 2d 351 (S.D.N.Y. 2008) …………………………………………....13-14

*Doctor's Associates, Inc. v. Stuart,*
    85 F.3d 975 (2d Cir.1996) …………………………………………………….21

*eBay, Inc. v. MercExchange,*
    547 U.S. 388 (2006) …………………………………………………………...4

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,*
    670 F.2d 642 (6th Cir. 1982) …………………………………………………18

*Gucci America, Inc. v. Guess?, Inc.,*
    868 F. Supp. 2d 207 (S.D.N.Y. 2012) …………………………………………..9

*Guthrie Healthcare System v. Context Media, Inc.,*
   826 F.3d 27 (2d Cir. 2016) …………………………………….………..6, 9 and 13

*Hartog & Co. v. SWIXcorn,*
   136 F.Supp.2d 531 (E.D.Va. 2001) ……………………………………………15

*Henegan Const. Co., Inc. v. Heneghan Contracting Corp.,*
   No. 00CIV. 9077 JGK, 2002 WL 1300252 (S.D.N.Y. June 12, 2002) ………………12

*Inwood Labs. v. Ives Labs.,*
   456 U.S. 844, 102 S. Ct. 2182 (1982) …………………………………………..…..20

*Kelly-Brown v. Winfrey,*
   717 F.3d 295 (2d. Cir. 2013) ……………………………………………………..20

*Landscape Forms, Inc. v. Columbia Cascade Co.,*
   113 F.3d 373 (2d Cir. 1997) ………………………………………………………7

*Lexington Mgmt. Corp. v. Lexington Capital Partners,*
   10 F. Supp. 2d 271 (S.D.N.Y.1998) …………………………………………….5-6

*Long Island R. Co. v. Int'l Ass'n of Machinists,*
   874 F.2d 901 (2d Cir. 1989) …………………………………………………..…16

*Louis Vuitton Malletier v. Sunny Merchandise,*
   97 F. Supp. 3d 485 (S.D.N.Y. 2015) ……………………………………………10-12

*Marks Org., Inc. v. Joles,*
   784 F. Supp. 2d 322 (S.D.N.Y. 2011) ……………………………………………16

*Mister Softee, Inc. Tsirkos,*
   2014 WL 2535114 (S.D.N.Y. June 5, 2014) ……………………………………………9

*Mrs. US Nat. Pageant, Inc. v. Miss US Org., LLC,*
   875 F.Supp. 2d 211 (W.D.N.Y. 2012) ……………………………………………4

*Nabisco, Inc. v. PF Brands, Inc.,*
   191 F.3d 208 (2d Cir. 1999) ……………………………………………………6, 10

*Paccar, Inc. v. Telescan Techs., LLC,*
   115 F. Supp. 2d 772, 2000 U.S. Dist. LEXIS 12857 (E.D.MI 2000) …………………18

*Paddington Corp. v. Attiki Importers & Distrib.,*
   996 F.2d 577 (2d Cir. 1993) …………………………………….……………..11

*Polaroid Corp. v. Polarad Elecs. Corp.,*

287 F.2d 492 (2d Cir. 1961) ……………………………………………………6-13

*Sporty's Farm LLC, v. Sportsman's Mkt., Inc.,*
202 F. 3d 489 (2d Cir. 2000) ……………………………………………………13-14

*Tiffany (NJ) Inc. v. eBay, Inc.,*
600 F.3d 93 (2d Cir. 2010) …………………………………………………………20

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,*
294 F.3d 383 (2d Cir. 2002) ……………………………………………………...7

*TCPIP Holding Co. v. Haar Communications Inc.,*
244 F.3d 88 (2d Cir. 2001) …………………………………………………………6

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,*
800 F.Supp.2d 515 (S.D.N.Y. May 13, 2011) ……………………………………..17

*Venetian Casino Resort, LLC v. venetiangold.com,*
380 F. Supp. 2d 737 (E.D. Va. 2005) …………………………………………...15

*Virgin Enterprises Ltd. v. Nawab,*
335 F.3d 141 (2d Cir. 2003) ……………………………………………...…9

*Wal-Mart Stores, Inc.* v. *Samara Bros., Inc.,*
529 U.S. 205 (2000) …………………………………………………………...5

*Winter v. Natural Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ……………………………………………………...…………4

**Statutes**

15 U.S.C. § 1115(a) ……………………………………………..……………5, 14

15 U.S.C. § 1125(d)(2)(C)(i)……..………………………………………………1

15 U.S.C. § 1114(1)(a) ………………………………………………...……1, 5

15 U.S.C. § 1125(a)(1)(A) ………..………………………………………...…5

15 U.S.C. § 1125(d)(1)(B)(i) ………..……………………………………………15

**Rules**

Rule 65(b) of the FRCP………..…………………………………….…........1

Rule 65(c) of the FRCP………..…………………………………….…........21

## I.    **PRELIMINARY STATEMENT**

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local Rules of this Court, Plaintiffs Life Style Futon LLC ("Life Style") and Easy Fit, Inc. ("Easy Fit") (collectively, "Easy Fit Company" or "Plaintiffs") respectfully applies to this Court for a preliminary injunction ("PI"), with other equitable relief.  In support of the requested relief, Plaintiffs state as follows:

The Easy Fit Company respectfully submits this Memorandum in support of its Application for a Preliminary Injunction ("Application") to halt brazen violations of the Lanham Act, including infringement of Plaintiffs' registered and incontestable trademark EASY FIT SLIPCOVRS, pursuant to 15 U.C.C. §1114(1), and violations of the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(2)(C)(i), anchored in Defendants' operation of multiple domain names that both infringe on Plaintiffs' trademark and create confusion with a prior-registered domain name of Plaintiffs. Plaintiffs received numerous complaints from irate consumers who purchased goods from the Defendants and mistakenly contacted Plaintiffs with various complaints. Immediate halting of the Defendants' Internet scams is direly needed to prevent sustained and irreparable damage to Plaintiffs' business and goodwill associated with the EASY FIT SLIPCOVER trademark, which Plaintiffs developed at great expense and efforts over the course of the past two decades. The Order should also direct the Registrar of the Defendants offending domain names, namely the Defendants Tucows, to transfer the ownership and control of the offending domain names to Plaintiffs.

Easy Fit Company has been operating for more than two decades, offering furniture, cushion, pillow and mattress coverings to consumers, including by direct sales through internet commerce such

as through its websites, www.easyfitcovers.com and www.easyfitslipcovers.com.  Easy Fit Company has developed a strong reputation in the industry and amongst the consuming public.

Easy Fit Company's flagship, house-brand trademark has been EASY FIT SLIPCOVER for nearly twenty years, since at least December 2001.  The trademark is owned by Plaintiff Life Style and Plaintiff Easy Fit is the exclusive licensee for the trademark.  In 2003, Life Style was awarded a U.S. Patent and Trademark Office registration, No. 2,706,591, for EASY FIT SLIPCOVER for "Bedding and Furniture Coverings."  After several years of registration and continued use of the EASY FIT SLIPCOVER trademark, on January 2, 2009, the USPTO conferred incontestability status unto the trademark, pursuant to 15 U.S.C. § 1065.

To date, the EASY FIT SLIPCOVER trademark is the center-piece of Plaintiffs' highly valuable business and embodies the very substantial goodwill therein.  From Plaintiffs' substantial business activities and long-developed relationships with consumers, the trademark has become highly valuable and recognizable amongst the consuming public.  Easy Fit company's online goods and services are accessible, *inter alia*, via its websites, www.easyfitcovers.com and www.easyfitslipcovers.com, both of which Plaintiffs registered in 2002.

Defendants, EasyFit Slipcover LTD. ("EasyFit LTD"), Ilyass Et Tahiri ("Et Tahiri") and Cabrexa LLC ("Cabrexa"), have blatantly attempted to capitalize upon the goodwill in Plaintiffs' registered trademark, are impersonating Plaintiffs, and are causing consumer confusion amongst highly-disappointed consumers who did not receive products ordered from Defendants or received inferior-quality products to those supplied by Plaintiffs.  Adding insult to injury, Defendants have ignored or brushed-aside Plaintiffs' cease and desist letters that have sought to end the consumer confusion. (Nazginov Decl., at Pars. 9, 12 and 18).

Plaintiffs demanded that Defendants transfer the infringing domains to Easy Fit Company.  Defendant Et Tahiri initially agreed. He stated in response to the cease and desist letter: "i will transfer to you these two domain name easyfitslipcover.com and easyfitslipcover.co I have closed everything…"[sic].  But then Et Tahiri failed to take the promised action, stopped communicating with Plaintiffs' counsel, and even opened up a new and infringing website, similarly impersonating Plaintiffs' business, at www.cabrexa.com.

The Defendant Tucows, which is the Registrar of Defendant Et Tahiri's infringing domains www.easyfitcovers.com, easyfitslipcover.com and easyfitslipcover.co, has steadfastly refused to transfer the offending domains to Plaintiffs, stating that it "has no control or ownership over this domain…We are just the Registrar."  Thus, all Defendants seek to continue to profit from the ongoing infringement of Plaintiffs' highly valuable trademark EASY FIT SLIPCOVER. In the meantime, Easy Fit Company is being irreparably harmed, meriting issuance of a preliminary injunction to prevent the harm from endangering Easy Fit Company's continued viability as a business.

## II.    FACTUAL BACKGROUND

The facts and circumstances relevant to the application seeking a preliminary injunction regarding the Infringing Domains are contained in Plaintiff's Verified Complaint (the "Verified Complaint"), and in the Declaration of Lillian Nazginov dated February 18, 2021 ("Nazginov Decl.") and exhibits attached thereto. Plaintiff respectfully refers the Court to those documents for a full and accurate statement of Easy Fit Company's trademark rights and Defendants' wrongful conduct.

### III.    ARGUMENT

### 1. Plaintiffs are Entitled to a Preliminary Injunction and Restraining Order Prohibiting Further Scams and Confusion from the Identical, Infringing Domains.

### A.  Legal Standard for Preliminary Injunction

A movant seeking a preliminary injunction must show (1) either (a) a likelihood of success on the merits; or (b) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor," (2) a "a likelihood of irreparable harm" in the absence of an injunction; (3) that that "the balance of hardships tips in their favor"; and (4) that "public interest would not be disserved" by issuing preliminary relief." *See CJ Products LLC v. Snuggly Plushez LLC,* 809 F. Supp. 2d 127, 141 (E.D.N.Y. 2011)(citing *Salinger v. Colting,* 607 F.3d 68, 80 (2d Cir. 2010)); *see also eBay, Inc. v. MercExchange,* 547 U.S. 388, 391 (2006); *Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7,* 20 (2008).

Courts in this circuit have also granted injunctive relief, particularly temporary and preliminary relief, in relation to APCA claims, in order to prevent and mitigate confusion from the registration and use of identical or confusingly-similar internet domain names. *See, e.g., CJ Products LLC,* 809 F. Supp. 2d at 141; *see also Mrs. US Nat. Pageant, Inc. v. Miss US Org., LLC,* 875 F.Supp. 2d 211, 226 (W.D.N.Y. 2012).

### B.  Easy Fit Company Has a Likelihood of Success on the Merits of its Trademark Infringement Claims

The information contained in the Declaration of Lillian Nazginov and in its annexed documents shows that Defendants are brazenly using Easy Fit Company's registered trademark, EASY FIT SLIPCOVER, which is Plaintiffs' main trademark. The trademark registration is

*prima facie* evidence of Easy Fit Company's ownership of the mark, the validity of the trademark, and Plaintiffs' exclusive rights to use the trademark in connection with the bedding and furniture coverings that are the subject of this action. *See* 15 U.S.C. § 1115(a); *Wal-Mart Stores, Inc.* v. *Samara Bros., Inc.*, 529 U.S. 205, 209 (2000).

It is incontrovertible that Defendants are offering and selling imitations of Plaintiffs' bedding and furniture coverings with the registered EASY FIT SLIPCOVER trademark causing demonstrable consumer confusion in the marketplace. It is also undisputable that Easy Fit Company never consented to Defendants' use of its trademark on copycat, knockoff products.

### C.  Defendants' Conduct Has Caused Demonstrable Confusion and Will Continue to Cause Confusion Amongst the Consuming Public

The Lanham Act prohibits the unauthorized use in commerce of a registered mark where such use "is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A). *See Lexington Mgmt. Corp. v. Lexington Capital Partners,* 10 F. Supp. 2d 271, 277 (S.D.N.Y.1998) (The same standard governs Section 32 and 43(a)(1)(A) claims; granting preliminary injunction); *A.V.E.L.A., Inc., v. Estate of Marilyn Monroe, LLC,* 131 F. Supp. 3d 196, 209 (S.D.N.Y. 2015).

As shown in Exhibit A to the Nazginov Declaration, the mark EASY FIT SLIPCOVER was registered in 2003, more than five years ago, and is therefore "incontestable" within the meaning of 15 U.S.C. § 1065. Accordingly, the Easy Fit Company's mark is conclusively valid and entitled to protection. *See* 15 U.S.C. § 1115(b); *accord Lexington Mgmt. Corp.,* 10 F. Supp. 2d at 277-78. Easy Fit Company's mark is *prima facie* valid and entitled to protection. *See* 15 U.S.C. §1115(a).

The likelihood-of-confusion prong turns on whether ordinary consumers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of [the junior user's] mark." *Guthrie Healthcare System v. Context Media, Inc.,* 826 F.3d 27, 37 (2d Cir. 2016).  Here, <u>actual</u> consumer confusion has <u>already</u> occurred. Actual consumer confusion (rather than "likely" confusion) is strong, even preferred evidence of trademark infringement. *TCPIP Holding Co. v. Haar Communications Inc.*, 244 F.3d 88, 102 (2d Cir. 2001) ("When two marks have existed side by side in commerce, the evidence of actual confusion among consumers, or of absence of confusion, can be very helpful in determining whether a likelihood of confusion results from the junior's use of a mark similar to the senior mark); *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 212 (2d Cir. 1999)("if numerous instances of consumer confusion have occurred, that suggests a high likelihood of continuing confusion").  As expanded upon below, Plaintiffs have received angry communications from customers that their orders, actually submitted to defendants, had not been fulfilled by Plaintiffs and, moreover, highly negative reviews have been attributed to Plaintiff that, in fact, stem from the conduct of Defendants. (Nazginov Decl., at Par. 4).

To determine whether a likelihood of confusion exists, courts in this Circuit use the eight "*Polaroid*" factors, namely:"1) the strength of the plaintiff's mark; 2) the degree of similarity between marks; 3) the proximity of the products or services; 4) the likelihood that the senior user will 'bridge the gap' into the junior user's product or service line; 5) evidence of actual confusion between the marks; 6) whether the defendant adopted the mark in good faith; 7) the quality of defendant's products or services; and 8) the sophistication of the parties' customers." *Lexington Mgmt. Corp.,* 10 F. Supp. 2d at 278 (referencing *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir. 1961)). These factors are addressed below, in turn.

i.     **The EASY FIT SLIPCOVER Mark is Conceptually and Commercially Strong and is Recognized by Consumers**

To determine a mark's conceptual strength, courts use "Judge Friendly's familiar test for the inherent distinctiveness of trademarks in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 11 (2d Cir. 1976)." *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 377 (2d Cir. 1997). "The Abercrombie test classifies verbal marks into four categories which run in a continuum: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Landscape Forms, Inc.,* 113 F.3d at 377.

Here, although "Easy Fit" is a phrase, it has no inherent relationship to the goods for which the Plaintiffs mark is used, namely, "Bedding and Furniture Coverings." One would not say: "I purchased an 'easy fit' shirt." The correct expression would be a "fitted shirt." Similarly, a slipcover can be tightly or loosely fitted to a furniture item, but it is not an "easy fit" slipcover. Accordingly, Plaintiffs' mark can be deemed "suggestive" and not descriptive. And regardless, given Plaintiffs' long and uninterrupted use of the trademark for "Bedding and Furniture Coverings" consumers associate the mark with Plaintiffs.

A mark is commercially strong if it has acquired "secondary meaning," *i.e.*: "in the minds of the public, the primary significance of [the mark] [...] is to identify the source of the product rather than the product itself." *Christian Louboutin, S.A. v. Yves Saint Laurent America Holdings, Inc.,* 696 F.3d 206, 216 (2d Cir. 2012).

As discussed, *supra,* the EASY FIT SLIPCOVER registration attained incontestable status in 2009. Its primary significance is to identify Easy Fit Company as the source of the involved products. Accordingly, Plaintiffs' mark acquired secondary meaning as a matter of law. *See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,* 294 F.3d 383, 391 (2d Cir.

2002) ("Because FSLC continually maintained its registration of the mark, FSLC's mark is incontestable and, as a matter of law, it has acquired secondary meaning").

Even in the absence of Plaintiffs' incontestable trademark registration, Easy Fit Company is likely to establish that its EASY FIT SLIPCOVER has acquired secondary meaning. Easy Fit Company has invested significantly in creating the marketplace for its bedding and furniture coverings products.  This includes advertising and other promotional efforts, which have yielded enormous commercial success. Based on the foregoing, the first *Polaroid* factor favors Easy Fit Company.

### ii.   The Second *Polaroid* Factor: Defendants Reproduced the EASY FITSLIPCOVER Mark in Its Entirety

Defendants EasyFit Slipcovers LTD. and Et Tahiri have registered internet domains and reproduced the Plaintiffs' Mark literally in its entirety, as these defendants' use of "EasyFitSlipcovers" for bedding and furniture coverings is indistinguishable from Plaintiff's registered use of EASY FIT SLIPCOVER.  Defendants use the registered mark in its entirety, simply adding an "s" to the web domains. And Defendants use the registered mark on their goods and in association with their sales of slipcovers and other furniture coverings. Accordingly, the second *Polaroid* factor favors Easy Fit Company. *See Cadbury Beverages, Inc. v. Cott Corp.,*73 F.3d 474, 480 (2d Cir. 1996) ("For the purpose of considering the question of the similarity of the marks, the district court correctly determined that as a matter of law these marks [*i.e.,* "COTT" v. "COTT"] are identical").

### iii.   The Third *Polaroid* Factor: Defendants Sell the Same Products that Easy Fit Company is Widely Known for Selling

It is clear that Easy Fit Company manufactures and sells bedding and furniture-covers, which is precisely what Defendants offer at their imitation websites and e-commerce stores.

Defendants' offering of bedding and furniture-cover products heightens the likelihood of consumers confusing the source of defendants' products as originating from Easy Fit Company. *See Guthrie Healthcare Sys.,* 826 F.3d at 39 (Under the third *Polaroid* factor, courts consider "the subject matter of the commerce in which the two parties engage [...]"; finding a likelihood of confusion because, among other things, both parties provided healthcare-related goods and services); *Virgin Enterprises Ltd. v. Nawab,* 335 F.3d 141, 150 (2d Cir. 2003) ("[T]he closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source."). Accordingly, the third *Polaroid* factor favors Easy Fit Company.

### iv.    The Fourth *Polaroid* Factor: There is No "Gap" to Bridge

The fourth *Polaroid* "factor addresses the question of whether the two companies are likely to compete directly in the same market." *Gucci America, Inc. v. Guess?, Inc.,* 868 F. Supp. 2d 207, 239-40 (S.D.N.Y. 2012). Where, as here, the parties' goods are the same, this *Polaroid* factor is irrelevant because there is no gap to bridge. *See, e.g., Mister Softee, Inc. Tsirkos,* 2014 WL 2535114, *5 (S.D.N.Y. June 5, 2014) (issuing preliminary injunction; fourth *Polaroid* factor irrelevant where both parties sold ice cream).  That the parties compete head to head for the same customers can, instead, be described as favorable to Plaintiff, as there is no distance between the parties' products and customers as they compete in the same channels of trade.

### v.    The Fifth *Polaroid* Factor: Defendants Actually Confused Customers into Believing that Purchased Bedding and Furniture Cover Products Were From Plaintiffs, when the Products had In Fact been Sold by Defendants

Here, several customers sent message to Plaintiffs complaining that their product orders had not been delivered. However, upon investigation, it became clear that the orders had been

submitted not to Plaintiffs, but to the Defendants through their imitation sites. (Nazginov Decl., at Pars. 4-5) Furthermore, through the consumer review website, www.trustpilot.com, confused consumers have written terrible reviews that reflect badly on the Plaintiffs due to defendants' conduct. (Id., at Par. 5).  One such review directed other customers to "Avoid this company, do not give them your money…[they] [w]on't answer emails, phone number doesn't connect, clearly a dodgy company." (Id., at Exhibit B).  As set forth in *TCPIP* and *Nabisco* cases, *supra*, evidence of actual confusion can be more reliable than prognosticating a likelihood of consumer confusion.

Regardless, in this instance, it is obvious that there is a likelihood of consumer confusion between defendants' assumed EASY FIT SLIPCOVER mark and Plaintiffs' registered EASY FIT SLIPCOVER registered trademark. The marks are virtually identical.

### vi.    The Sixth *Polaroid* Factor: Defendants are using the EASY FIT SLIPCOVER Mark in Bad Faith

"A defendant's good faith—or lack thereof—in adopting its mark is highly consequential among the *Polaroid* factors." *Louis Vuitton Malletier v. Sunny Merchandise,* 97 F. Supp. 3d 485, 496 (S.D.N.Y. 2015). To be sure, "where the second-comer has adopted its mark in bad faith, the equitable balance is tipped significantly in favor of a finding of infringement. Courts have found a presumption of likelihood of confusion in such circumstances." *Louis Vuitton Malletier,* 97 F. Supp.3d at 496.

Prior to filing the instant action, Easy Fit Company wrote to Defendants EasyFit LTD, Et Tahiri and Cabrexa, as well as to Tucows, that they must cease using Easy Fit Company's registered trademark. However, despite the appearance of forthcoming compliance from Et Tahiri, including his promises to cease use, close the online stores, and turn over the infringing

domains to Plaintiffs, have all proven to be fallacious. And of course, Defendants are charged with knowledge of Plaintiffs' mark. *See* 15 U.S.C. § 1072 ("Registration of a mark on the principal register [...] [constitutes] constructive notice of the registrant's claim of ownership thereof"). Easy Fit Company's marketing and promotion of the EASY FIT SLIPCOVER brand are well-known in the industry, including due to their lengthy use of the trademark for nearly twenty years.

Accordingly, there is no question that defendants also adopted the EASY FIT SLIPCOVER Mark with actual knowledge of Easy Fit Company's rights therein. There is likewise no question that defendants use the mark to exploit the Marks' widespread fame and goodwill. This is textbook bad faith. *See Louis Vuitton Malletier v. Sunny Merchandise,* 97 F. Supp. 3d 485, 496 (S.D.N.Y. 2015) (explaining that the sixth *Polaroid* factor "is an equitable inquiry which seeks to answer the overarching question of whether defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill"). After direct notice, via cease and desist letter, defendants apologized and offered to turn their sites over to Plaintiffs, only to attempt to continue their infringing activities, including by moving their infringing store to www.cabrexa.com, owned by Cabrexa LLC, which has also failed to respond to a cease and desist letter. (Nazginov Decl., at Pars. 13-16).

Based on the foregoing, the sixth *Polaroid* factor favors Plaintiffs. *See Paddington Corp. v. Attiki Importers & Distrib.,* 996 F.2d 577, 586-87 (2d Cir. 1993) (when actual or constructive knowledge "is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, we have upheld findings of bad faith").

**vii.   The Seventh *Polaroid* Factor: Defendants' Use of the EASY FIT SLIPCOVER Mark Jeopardizes Irreparably the Reputation of the Plaintiffs and Plaintiffs' Mark**

The seventh *Polaroid* factor concerns "whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Louis Vuitton Malletier,* 97 F. Supp. 3d at 497-98. Whereas Easy Fit Company's products are highly regarded in the industry and amongst consumers, the defendants have been deemed a company to "avoid" in consumer reviews. (Nazginov Decl., at Par. 5). Plaintiffs have received numerous angry communications from customers that their orders did not arrive, but learned that in fact, the orders had been submitted by the customers to defendants, who failed to timely deliver, if at all. (Id., at Par. 4). This robbery is a quintessential example of irreparable harm to the trademark owner through lack of control over how the trademark is being used. Accordingly, the seventh *Polaroid* factor favors Easy Fit Company. *See Henegan Const. Co., Inc. v. Heneghan Contracting Corp.,* No. 00CIV. 9077 JGK, 2002 WL 1300252, at *8 (S.D.N.Y. June 12, 2002) ("The fact that the plaintiff has maintained high-quality services for so many years makes it more likely that it would be damaged if its reputation were placed beyond its control.").

**viii.   The Eighth *Polaroid* Factor: Since the Price Point is below $50 per Cover (and sometimes considerably less) for Plaintiffs' and Defendants' Products Even Normally Prudent Purchasers Might be Misled to Believe that the Defendants' Products are Genuine Easy Fit Company Covers**

The eighth and final *Polaroid* factor concerns "the sophistication of the consumers and the degree of care likely to be exercised in purchasing the product." *Coty Inc. v. Excell Brands, LLC,* 277 F. Supp. 3d 425, 456 (S.D.N.Y. 2017). Here, the retail price point of Plaintiffs' products is generally under $100 or even $50 dollars, and this correlates with a relaxed degree of consumer scrutiny.  For example, chair covers from Plaintiff typically range from "$23.49 to

$88.00" and chair covers from Defendants are priced below $20.  Thus, Defendants' infringement promotes confusion amongst even typically prudent shoppers. The eighth *Polaroid* factor therefore favors Plaintiffs.

ix.     **All of the *Polaroid* Factors Strongly Favor The Easy Fit Company**

In sum, each of the relevant *Polaroid* factors strongly favors Easy Fit Company. This "powerful showing of a likelihood of confusion" (*Guthrie Healthcare Sys.,* 826 F.3d at 46), including *actual* instances of consumer confusion, combined with the overwhelming strength and validity of the Easy Fit Company's mark, and Defendants' bad faith, establishes that Easy Fit Company is likely to succeed on the merits of its trademark infringement claims.

**D. Easy Fit Company Has a Likelihood of Success on the Merits of its ACPA Claim.**

The Anti-Cybersquatting Consumer Protection Act ("ACPA") of the Lanham Act, 15 U.S.C. § 1125(d)(2), imposes civil liability for cybersquatting.  A domain name registrant commits cybersquatting by registering a domain name identical or confusingly similar to another's valid and protectable trademark and uses the domain name with the bad faith intent to profit from the goodwill associated with the trademark. 15 U.S.C. § 1125(d)(2). As established below, the registered EASY FIT SLIPCOVER mark is a valid and protectable trademark, and the Infringing Domains are confusingly similar to the EASY FIT SLIPCOVER Mark, as a matter of law.

To prevail on a claim for cybersquatting under the Lanham Act, a plaintiff must first demonstrate rights to a valid, distinctive trademark. *See 15 U.S.C. §* 1125(d)(1); *see also Sporty's Farm LLC, v. Sportsman's Mkt., Inc.,* 202 F. 3d 489, 493 (2d Cir. 2000). The registration of a mark on the Principal Register is *prima facie* evidence of validity, ownership, and minimum

distinctiveness. *See Dress for Success Worldwide v. Dress 4 Success,* 589 F. Supp. 2d 351, 358 (S.D.N.Y. 2008); *see also 15 U .S.C. § 1115(a)* ("Any registration… on the principal register… shall be *prima facie* evidence of the validity of a registered mark").

i.      **Plaintiffs' EASY FIT SLIPCOVER Mark was distinctive and strong at the time the Defendants' Infringing Domains were registered**

Plaintiffs have used the EASY FIT SLIPCOVER Mark in U.S. commerce since 2001, and the Mark has been registered since 2003. Plaintiffs registered and have used their web domains, www.easyfitcovers.com  and www.easyfitslipcovers.com, since 2002.

The Infringing Domains were registered on November 5, 2019 (easyfitslipcover.com), May 31, 2020 (easyfitslipcover.co), and August 4, 2020 (easyfitcover.com), more than 18 years after Plaintiffs begun using the EASY FIT SLIPCOVER Mark. Plaintiff's use of the Mark predates the registration of the Infringing Domains by nearly two decades.

ii.     **The Infringing Domains are identical and confusingly similar to Plaintiffs' trademark such that they should be transferred to Plaintiff.**

It is well established that an intent to confuse by registering and using a domain name that incorporates another's mark gives rise to a high likelihood of confusion. See *CJ Prods. LLC,* 809 F. Supp. 2d at 155. Indeed, even without a presumption of confusion, there is ample evidence that the Infringing Domain names are not only "confusingly similar" to the EASY FIT SLIPCOVER Mark—they are virtually identical, with only an "s" added.  The "confusingly similar" standard in the cybersquatting context is much broader than the "likelihood of confusion" standard in typical trademark infringement actions. See *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 498 n. 11 (2d Cir. 2000) ("We note that "confusingly similar" is a different standard from the "likelihood of confusion" standard for trademark

infringement adopted by this court in Polaroid…") see also *Hartog & Co. v. SWIXcorn*, 136 F.Supp.2d 531, 539-40 (E.D.Va. 2001) ("The court concludes that because Congress clearly intended the ACPA to be remedial, and that its two paragraphs be read together, traditional "likelihood of confusion" analysis is inappropriate in construction and application of the ACPA. "To interpret 'confusingly similar' as shorthand for the 'likelihood of confusion' infringement test would largely undermine Congress's goal of stopping individuals who own domain names that approximate distinctive marks… Under the ACPA, confusingly similar "must simply mean that the plaintiff's mark and the defendant's domain name are so similar in sight, sound and meaning that they could be confused." *Venetian Casino Resort, LLC v. venetiangold.com*, 380 F. Supp. 2d 737, 742 (E.D. Va. 2005).

Here, the registered domains are identical with only the plural "s" deleted in defendants' copycat sites, and there is evidence of actual consumer confusion in the form of misdirected consumer complaints to Plaintiffs (for products purchased from Defendants) and scathing reviews written about Plaintiffs' business for the "dodgy" conduct of Defendants. Thus, the threshold is met for finding that the Defendants' domains are confusingly similar to those owned and operated by Plaintiffs.

### iii.   The Defendants' Infringing Domains are being used with a "bad faith intent to profit" from the EASY FIT SLIPCOVER trademark.

The ACPA includes a non-exhaustive list of factors a court may consider in assessing bad faith. 15 U.S.C. § 1125(d)(1)(B)(i). The factors particularly relevant to establishing "a bad faith intent to profit" in this case include:

> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or

disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names…

15 U.S.C. § 1125(d)(1) (B)(i)(V) & (VIII).

A finding of "a bad faith intent to profit" is appropriate under any or all of these factors, and is appropriate in this case based on Defendants' use of the Infringing Domains in connection with its scam to usurp Plaintiffs' business, including by attempts to shut down Plaintiffs' website, as set forth in the Verified Complaint, the Nazginov Declaration and herein.

### E.  Plaintiff Will Suffer Immediate and Irreparable Injury and Has No Adequate Remedy

Irreparable harm exists when "remedies available at law, such as monetary damages, are inadequate to compensate the plaintiff." *Marks Org., Inc. v. Joles,* 784 F. Supp. 2d 322, 334 (S.D.N.Y. 2011) (granting preliminary-injunction motion). Of particular significance here and now, harm both to parties within a lawsuit *and to the public* may be considered when determining if failure to issue a preliminary injunction will result in irreparable harm. *Long Island R. Co. v. Int'l Ass'n of Machinists,* 874 F.2d 901 (2d Cir. 1989) (preliminary injunction prohibiting union from striking was appropriate where the general public would sustain irreparable harm). Here, Defendants' conduct is likely to irreparably harm Easy Fit Company in three respects, namely: (i) inability to control quality, (ii) product reputation and (iii) dilution of Easy Fit Company's main trademark.

Indeed, preliminary injunctive relief is routinely granted in ACPA cases such as this one, where there is a likelihood of confusion because such confusion presumptively creates irreparable harm to the goodwill and the reputation of the trademark owner. *See Lone Star,* 43 F.3d at 938-39 ("[W]e recognize that irreparable injury regularly follows from trademark infringement."); *see*

*also Atlas Copco AB v. atlascopcorian.com,* 533 F. Supp. 2d 610, 614 (E.D. Va. 2008) (presumption of irreparable harm applies in ACPA claims where counterfeit trademark used). The evidence set forth in the Verified Complaint, Declaration of Nazginov and exhibits demonstrate Plaintiffs' entitlement to a judgment against Defendants. However, Plaintiffs recognize that it may take a significant amount of time, if Defendants respond to the Verified Complaint, before a final determination of this action is rendered on the merits. In the interim, Plaintiffs' reputation and business are significantly damaged every single day that the Defendants are allowed to use the Infringing Domains to confuse Plaintiffs' customers.

On the other hand, there can be no claim of injury or prejudice if the Defendants are directed to transfer the Infringing Domains to Plaintiff during the pendency of this action because the only effect will be to put a temporary end to the existing consumer confusion in the marketplace that will only continue if no preliminary injunction issues, and which clearly is to the detriment of consumers duped by the Defendants' conduct. There is no legitimate purpose served by Defendants' use of the Infringing Domains other than to cause harm to Plaintiff. Thus, no injury will result to Defendants if Plaintiffs' motion is granted.

Here, injunctive relief is likely the only relief that Plaintiffs could recover to prevent the destruction of the business and loss of control over their mark caused by the Defendants' surreptitious activities via the Infringing Domains. *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,* 800 F.Supp.2d 515, 540, (S.D.N.Y. May 13, 2011) ("Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark… because loss of control over one's reputation is neither calculable nor precisely compensable."). As such, Plaintiffs also do not have adequate remedy at law. For these

reasons, Plaintiffs seek the equitable relief of a restraining and preliminary injunction to prevent further and permanent damage to Plaintiff.

**F.  The Equities Clearly Balance in Favor of Plaintiffs, Warranting the Issuance of a Preliminary Injunction.**

By submitting this application, Plaintiffs are not seeking any advantage. Rather, the Plaintiffs simply seek a Court Order that will allow them to continue working in their business free from unwarranted disruption by use of the Infringing Domains. Considering Defendants' egregious acts using the Infringing Domains herein, which have been plainly documented, it is respectfully submitted that the issuance of a preliminary injunction and restraining order is necessary to protect Plaintiffs and their customers from further damage.

**G.  The Public Interest Will Not Be Harmed by the Issuance of the Requested Injunction**

The issuance of the requested injunction does not conflict with the public interest. Presented with circumstances similar to herein, courts have found that the public interest clearly tips in favor of the innocent trademark owner. *See Atlas Copco AB,* 533 F. Supp. 2d at 615.  As noted in *Frisch's Restaurants, Inc.* v. *Elby's Big Boy of Steubenville, Inc.*, the substantial financial expenses incurred by a trademark owner in promoting its trademark strongly support granting injunctive relief. *See* 670 F.2d 642, 651 (6th Cir. 1982).  Finally, "the public interest is served by preventing consumer confusion in the marketplace." *Davidoff & Cie, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1304 (11th Cir. 2001). "It is in the public's interest to protect consumers from confusion and protect the right of a trademark owner to control its own product's reputation." *Paccar, Inc. v. Telescan Techs., LLC,* 115 F. Supp. 2d 772, 780, 2000 U.S. Dist. LEXIS 12857 (E.D.MI 2000)

Here, there is evidence that consumers are being duped into purchasing defendants' products when they believe that the products are being offered by Easy Fit Company.  Thus, issuing an injunction will put a halt to Defendants' conduct that is damaging consumers by causing confusion in the marketplace, or worse, causing them to be ripped off.  The public interest "will not be harmed by the issuance of the requested injunction"; to the contrary, the public will benefit from a temporary cessation of defendants' apparent bad faith conduct.

2. **Plaintiffs Sufficiently Put the Defendants On Notice of their Infringing and Damaging Activities, and the Defendants Have Had, And Continue to Have, the Ability to Stop the Infringing and Damaging Activities**

A preliminary injunction is further warranted because Plaintiffs put all the defendants on notice of Plaintiffs rights and the damages defendants are causing by either directly infringing upon Plaintiffs' registered trademark (Defendants Et Tahiri, EasyFit LTD and Cabrexa) or by facilitating and enabling the infringement by maintaining the domain registration and refusing to turn over the registrations to Plaintiffs (specifically, Tucows).

Plaintiffs sent a notice letter to Defendants Et Tahiri and EasyFit LTD on January 7, 2021. (Mazginov Decl., at Par. 8).  Et Tahiri acknowledged and apologized for his infringement, promising to turn over the infringing domains to Plaintiffs. (Id., at Pat 11).  However, despite his apologies, Et Tahiri's infringement has continued through his control and domination of Cabrexa LLC and the [www.cabrexa.com](http://www.cabrexa.com) domain. (Id., at Pars. 16, 22).

Plaintiffs' counsel wrote to the Cabrexa entity directly on February 16, 2021 (Id., at Pars. 20-21).  Despite receiving confirmation from Cabrexa's legal agent that Plaintiffs' notice letter had been "uploaded" to Cabrexa's email (Id., at Par. 21), Cabrexa has not responded to Plaintiff and has not stopped its infringing activities.

{02630643.1}                                  19

Defendant Tucows, the Registrant for the Defendants' offending web domains, was put on notice of the infringing activities of Defendants on January 7, 2021. (Id., at Par. 13).   But, Tucows has a policy of willful blindness to reports of cybersquatting and trademark infringement, as professed in the "Tucows Domain Promise": "*Tucows' approach to any domain name dispute begins with the firm belief that your domain name is your own…We will not allow your domain name to be used as leverage in a dispute. We will not readily 'seize' your domain name under public pressure as other registrars have done*." (Id., at Par. 14). Tucows has not veered from this "promise", despite Plaintiffs presenting to Tucows indisputable evidence of the infringing actions of Defendants. Now, even more infringement will be facilitated by Tucows against Plaintiffs, through the web-domain www.easyfitcover.com, where Defendants Et Tahiri and EasyFit LTD announce: "Easy Fit Cover OPENING SOON" (Id., at Par. 24), making clear that Defendants are preparing to reopen their infringing store at the infringing domain.

Tucows therefore can be deemed a contributory trademark infringer. "To be liable for contributory trademark infringement, a defendant must have either (1) 'intentionally induced' the primary infringer to infringe, <u>or</u> (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d. Cir. 2013) citing *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 855, 102 S. Ct. 2182 (1982).  Here, Tucows has been apprised of defendants' intention to reopen their infringing store at the infringing domain, and Tucows knows of defendants' infringement and harm caused to Plaintiffs.

In *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 107 (2d Cir. 2010), the Second Circuit explained:

> For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit

goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.

Tucows was specifically informed by Plaintiffs' counsel of Defendant Et Tahiri and EasyFit

LTD's activities that infringe upon the EASY FIT SLIPCOVER trademark (Mazginov Decl., at

Exhibit F); yet, Tucows refuses to exercise its control over the domain to stop the infringement.

(Id., at Par. 15).  Now, Defendants proclaim their intention to reopen the ecommerce store,

previously closed due to the infringement, and in such a manner clear to again infringe upon

Plaintiffs' trademark and to cause it to lose control of its reputation.

### 3.  Security

Under Fed. R. Civ. P. 65(c), district courts have "wide discretion in the matter of security

and it has been held proper for the court to require no bond where there has been no proof of

likelihood of harm." *Doctor's Associates, Inc. v. Stuart,* 85 F.3d 975, 985 (2d Cir.1996). No one

will suffer any actual harm in stopping Defendants' interference with Plaintiff's business.  Given

Easy Fit Company's likelihood of success shown above, only a modest, perhaps $1,000 bond

would be sufficient, should any bond be imposed at all.

### IV.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that the Court grant the motion for

a preliminary injunction relative to the registered EASY FIT SLIPCOVER Mark.  Plaintiffs are

likely to succeed on the merits of their claims, and will suffer irreparable harm should the

injunction not be granted.


Date: New York, New York                    Respectfully submitted,
       February 23, 2021

                                          **OSTROLENK FABER LLP**

                                          /s/ Max Moskowitz

                                          Max Moskowitz
                                          Ariel Peikes
                                          845 Third Avenue
                                          New York, New York 10022
                                          Telephone: (212) 596-0500
                                          Facsimile: (212) 382-0888
                                          mmoskowitz@ostrolenk.com
                                          apeikes@ostrolenk.com

                                          *Attorneys for Plaintiffs*