Max Moskowitz
Ariel Peikes
OSTROLENK FABER LLP
845 Third Avenue
New York, NY 10022
mmoskowitz@ostrolenk.com
apeikes@ostrolenk.com
Telephone: (212) 382-0700
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LIFE STYLE FUTON, INC., and EASY FIT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>EASYFIT SLIPCOVER, LTD., ILYASS ET TAHIRI, TUCOWS, INC., TUCOWS.COM CO., and CABREXA, LLC, and the domain names:<br>**www.easyfitcover.com, www.easyfitslipcover.com,** and **www.easyfitslipcover.co**, *in Rem*.<br><br>Defendants. | Index No.: 1:21-cv-01482-GHW |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN RESPONSE TO OPPOSITION BY DEFENDANTS TUCOWS, INC., AND TUCOWS.COM CO. TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

{02641256.1}

## **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ................................................................................................ 1

    A. As to the Defendants Et Tahiri, EasyFit LTD and Cabrexa LLC ......................................... 1

    B. As to the Defendants Tucows Inc. and Tucows.com Co ....................................................... 2

II. DISCUSSION ............................................................................................................................ 5

    A. 15 U.S.C. 1114(2)(D) Does not Immunize Tucows' Conduct Described in the Verified Complaint ................................................................................................. 5

    B. The Relief Requested by Plaintiffs is not Directed to Tucows' Registrar Services ................................................................................................. 7

    C. Plaintiffs are the Putative Owners of the www.easyfitslipcovers.com Domains ................................................................................................. 9

    D. Tucows' Submissions Do Not Negate Plaintiffs' Showing of Irreparable Injury and Likelihood of Success on the Merits ................................................................................................. 9

III. CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acad. of Motion Pictures Arts & Scis. v. Godaddy.com, Inc.*
  2013 U.S. Dist. LEXIS 198592 (C.D. Cal. June 21, 2013) .............................................................. 7

*CJ Products LLC v. Snuggly Plushez LLC,*
  809 F. Supp. 2d 127 (E.D.N.Y. 2011) ........................................................................................ 10

*InvenTel Prods., LLC v. Li*
  406 F. Supp. 3d 396 (D.N.J. 2019) ................................................................................ 5, Footnote 1

*Salinger v. Colting,*
  607 F.3d 68 (2d Cir. 2010) ........................................................................................................ 10

*Solid Host, NL v. Namecheap, Inc.*,
  652 F. Supp. 2d 1092 (C.D. Cal. May 19, 2009) ............................................................................ 7

**Statutes**

15 U.S.C. § 1065 ............................................................................................................................... 4

15 U.S.C. § 1114(D)(2)(iii) ........................................................................................................*passim*

Plaintiffs Life Style Futon LLC ("Life Style") and Easy Fit, Inc. ("Easy Fit") (collectively, "Easy Fit Company" or "Plaintiffs") submit this Reply Memorandum in response to the Opposition papers filed by the Defendants Tucows, Inc. and Tucows.com Co. (collectively "Tucows") as follows.

## I. PRELIMINARY STATEMENT

### A. As to the Defendants Et Tahiri, EasyFit LTD and Cabrexa LLC

The factual scenario has <u>materially changed</u> since Plaintiffs, Easy Fit Company, filed this action (and the present motion) on February 18, 2021.

On February 21, 2021, the Defendant, U.K. entity EasyFit Slipcover LTD. ("EasyFit LTD") formally changed its name to Cabrexa LTD ("Cabrexa LTD"), which needs to be distinguished from the United States, Wyoming-registered Defendant entity, Cabrexa LLC ("Cabrexa LLC"). Also since the filing of the present action, while the Defendant Ilyass Et Tahiri ("Et Tahiri") is continuing his E-commerce sales of furniture coverings, that business is now being conducted via the online selling portal using the domain name [www.cabrexa.com](www.cabrexa.com), which online portal appears to be owned by the United States Defendant Cabrexa LLC. The [www.cabrexa.com](www.cabrexa.com) portal, <u>significantly,</u> no longer seems to use Plaintiffs' registered (and incontestable) trademark EASY FIT SLIPCOVERS.

Whether to avoid an injunction or monetary liability, or other reasons, none of the Defendants Et Tahiri, EasyFit LTD (now Cabrexa LTD), and Cabrexa LLC has responded to this motion, despite being served with the motion papers by email and in-person (at their London business address). Indeed, the Defendant Et Tahiri's (who controls the Defendants EasyFit LTD/Cabrexa LTD and Cabrexa LLC) knowledge and awareness of the filing of this action and

present motion is essentially admitted. On March 9, 2021, Mr. Et Tahiri responded to Plaintiffs' counsel Ariel Peikes (who previously emailed to him the lawsuit papers), as indicated below.

> From: Ilyass Ettahiri <ilyassettahiri24@gmail.com>
> Date: March 9, 2021 at 3:47:28 PM EST
> To: Ariel Peikes <apeikes@ostrolenk.com>
> Subject: Fwd: Your domain has been unlocked

Mr. Et Tahiri provided details for transferring the accused, cybersquatting domain name www.easyfitslipcover.co to Plaintiffs, as more fully described in the annexed Peikes Declaration.

Hence, given the above and this Court's Order of March 2, 2021[Docket No. 31] warning Defendants:

> C. Defendants are hereby given notice that failure to appear at the show cause hearing scheduled in Paragraph A may result in the imposition of a preliminary injunction against them pursuant to Federal Rule of Civil Procedure 65, which may be effective immediately upon the issuance of this Order, and may extend throughout the litigation under the same terms and conditions as set forth in this Order;
>
> D. Plaintiffs are to serve a copy of this order upon Defendants no later than March 5,

entry of the requested preliminary injunction against the Defendants Et Tahiri, EasyFit LTD/Cabrexa LTD and Cabrexa LLC is warranted and respectfully requested.

**B.     As to the Defendants Tucows Inc. and Tucows.com Co.**

Plaintiffs copied the Defendants Tucows on their pre-lawsuit letter dated January 7, 2021 to the Defendant Et Tahiri, which included a copy of Plaintiffs' trademark registration for the mark EASY FIT SLIPCOVERS and which detailed Et Tahiri's et al.'s illegal cybersquatting violations. Prior to the filing of this law suit, Tucows was further contacted in several communications regarding its involvement with the infringing activities complained of herein.

The Complaint allegations against Tucows include:

77. With full knowledge of Plaintiffs' rights in the EASY FIT SLIPCOVER Mark, the Tucows Defendants and Cabrexa <u>have generated business and income from providing website services to Defendants</u> EasyFit LTD and Et Tahiri, including <u>web hosting and optimization services</u>, while EasyFit LTD and Et Tahiri engage in blatant infringement of Plaintiffs' EASY FIT SLIPCOVER Mark, including luring customers away from Plaintiffs to the Defendant EasyFit LTD and Et Tahiri's sites through the unauthorized exploitation of Plaintiffs' Mark.

78. The Tucows Defendants and Cabrexa induced, aided, facilitated, participated in and/or materially contributed to the trademark infringement of Defendants Easy Slipcover and Et Tahiri of the EASY FIT SLIPCOVER Mark in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

79. By <u>providing website hosting, development and optimization services</u> to Defendants EasyFit LTD and Et Tahiri, Defendants Tucows and Cabrexa <u>supplied the necessary marketplace</u> for the infringement of the EASY FIT SLIPCOVER Mark and received financial benefit therefrom.

80. The Tucows Defendants and Cabrexa exercised control over the means of infringement described above. *Even when informed by Plaintiffs of the trademark infringement of EasyFit LTD and Et Tahiri, the Tucows Defendants and Cabrexa continued to accept business from and provided the defendants with the necessary services to make the infringement over the internet possible, profitable and lucrative.(Emphasis added)*

Selling goods online ostensibly requires the assistance and involvement of numerous supporting entities. Thus, Et Tahiri et al. utilized Amazon in their infringing, selling activities, but the mere notice thereof to Amazon by Plaintiffs resulted in the immediate stoppage of the

infringing sales through Amazon. The same occurred at Shopify, another online support service, which stopped the complained of infringing activities virtually immediately.

In contrast, upon being contacted by Plaintiffs numerous times, Tucows opened "investigation tickets" and then responded curtly that they are just the "REGISTRAR," asking Plaintiffs, effectively, to take their word for it. But the Tucows web portal proclaims that, besides being the second largest domain name REGISTRAR in the world, Tucows provide a full range of web hosting and marketing assistance that are not protected by 15 USC 1114(2)(D), as detailed in the annexed Peikes Declaration. These services include "tools…to manage your domains, email and DNS," hosting and other online services (Tucows' "eNom" services), "retail solutions" and "becom[ing] a domain name seller"/reseller (OpenSRS.com and eNom), among others. See Peikes Declaration, at Par. 6.

Thus, at heart, Tucows contests the Complaint's factual allegations, including that Tucows has "*generated business and income from providing website services to Defendants*" and have provided to Et Tahiri et al. "*website hosting, development and optimization services*". In the alternative, Tucows offers a blatantly overbroad interpretation of 15 U.S.C. 1114(2)(D), namely, that because Tucows offers registrar services, all of its other (non-REGISTRAR) activities are cloaked with immunity. This cannot be what Congress intended.

Further, the fact that in their opposition to the current motion, Tucows is attacking the "validity" of Plaintiffs' rights to the EASY FIT SLIPCOVER trademark seems to contradict their factual protestation of being nothing other than a domain name REGISTRAR. If the Complaint allegations were factually incorrect, Tucows should have not needed to attack the validity of Plaintiffs' incontestable (See 15 U.S.C. § 1065) and duly registered trademark. Tucows claims it is agnostic regarding trademark use on its registered domains, but goes on the offense against the

trademark owners, here Plaintiffs, when Tucows' non-registrar services are called into question for contributing to trademark infringement. As a mere Registrar, Tucows should not have cared one way or the other, who owns the right to control the domain names in dispute herein. The preliminary injunction that Plaintiffs are seeking in this motion is against using and benefitting from the use of the registered trademark and the associated domain names, which if granted would not impact Tucows if it were just a passive domain name registrar.

## II. DISCUSSION

### A. 15 U.S.C. 1114(2)(D) Does not Immunize Tucows' Conduct Described in the Verified Complaint

15 U.S.C. 1114(2)(D) confers limited immunity to a "domain name registrar" for its registrar activities, i.e., "registration or maintenance of a domain name" and "refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name." However, the U.S. Code provides that a registrar can be held liable for its "registration or maintenance of a domain name" when there is a "showing of bad faith intent to profit from such registration or maintenance of the domain name." 15 U.S.C. 1114(2)(D)(iii). Consequently, Tucows overstates the immunity conferred on it by the U.S. Code. As noted above, Plaintiff sent to Tucows pre-lawsuit correspondence. These communications placed Tucows on notice of Plaintiffs' incontestable and registered U.S. trademark rights, and sought some cooperation from Tucows, including providing some basic information regarding the identity of the alleged trademark infringer, a customer of Tucows. Tucows elected to provide no cooperation to Plaintiffs whatsoever, necessitating this lawsuit and preliminary injunction motion.[1]

---

[1] The facts herein are inapposite to those in *InvenTel Prods., LLC v. Li*, 406 F. Supp. 3d 396 (D.N.J. 2019), a decision relied upon by Tucows. In its opinion, the District Court reasoned that: "Had InvenTel taken advantage of GoDaddy's takedown request procedures, and GoDaddy refused to deregister the

Tucows also reveals only part of the story as to its relationship to the Defendants Et Tahiri et al. Tucows is more, much more, than a domain name registrar. As plead in Plaintiffs' Verified Complaint, Tucows has "generated business and income from providing website services" to Et Tahiri et al. (Par. 77), and, more specifically, "provid[ed] website hosting, development and optimization services" (Par. 79) and "provided the [Et Tahiri] defendants with necessary services to make the infringement over the internet possible, profitable and lucrative" (Par. 80), including after being informed of Plaintiffs' trademark rights and Et Tahiri et al.'s infringement of Plaintiffs' rights.

Tucows' website, www.tucows.com, in a section entitled "Our services" offers a wide array of services that Tucows provides to website owners such as "hover", which is described as "**Retail solutions** for domain names and **mailboxes** sold to customers like you, worldwide." (Emphasis supplied).  Also offered are "enom" services, described as including "**hosting**, SSL certificates, **email services**, and **Website building software**", and "OpenSRS" services, described as "**Global reseller solutions** for domain names and **Internet security services**." (Emphasis supplied). (See Peikes Declaration, at Ex. C).  Nowhere in Tucows' Opposition papers does Tucows set forth any argument whatsoever that the above-described Tucows' services are statutorily exempted from claims of contributory trademark infringement.  For example, there is no statutory exemption to trademark infringement liability for providing "Website building software" to a trademark infringer, including after being put on-notice of a

---

Website (despite evidence of infringement), InvenTel may have a claim. But here, InvenTel ran to federal court without informing GoDaddy of the infringement. Having no notice of the infringement, liability will not attach because GoDaddy did not take any action with the requisite knowledge." Here, Plaintiffs allege that Tucows provided web hosting and optimization services to the Et Tahiri defendants, and Tucows continued to provide such services even *after* Plaintiffs submitted notices to Tucows of these defendants infringement upon Plaintiffs' registered trademark rights, all of which occurred pre-lawsuit. Besides, the present motion is not a motion to dismiss, but rather for a preliminary injunction that would bar Tucows from further acts of contributory trademark infringement that it self-righteously protests it never committed and, therefore, should be willing to accept such limitations.

{02641256.1}                                6

trademark owner's registered trademark rights and the illegal activities of the infringer/website-proprietor.

This legal issue was addressed by the district court in *Acad. of Motion Pictures Arts & Scis. v. Godaddy.com, Inc.*, 2013 U.S. Dist. LEXIS 198592 (C.D. Cal. June 21, 2013), where the court determined that Godaddy's services went beyond the safe harbor provisions for registrars in 15 U.S.C. § 1114(2)(D)(iii). The court determined that the safe harbor provision "shelters only those registrars acting **solely in the 'registration' or 'maintenance' capacity**; registrars are not immunized from liability for conduct that goes beyond mere registration and maintenance of domain names." 2013 U.S. Dist. LEXIS 198592, *15. Godaddy assisted with creating the webpages and placed advertising on those pages for "which it can collect a fee-per-click." Id. The court ruled that creating webpages, placing ads and collecting ad revenue were not activities within the safe harbor provision of 15 U.S.C. 1114(2)(D)(iii). See also *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092 (C.D. Cal. May 19, 2009)(rejecting defendant's argument that 15 U.S.C. 1114(2)(D)(iii) immunized the defendant from all claims, including for conduct by defendant that exceeded its obligations as a domain registrar – "The court thus concludes that § 1114(2)(D)(i) was not intended to shield registrars from liability for actions outside their core function as registrars." 652 F. Supp. 2d at 1105).

  **B.**  <u>The Relief Requested by Plaintiffs is not Directed to Tucows' Registrar Services</u>

Despite the protests of Tucows, Plaintiffs' requested relief in this Preliminary Injunction Motion is set forth in the Proposed Order for Entry of a Preliminary Injunction [Dkt. No. 28]. As to Tucows, Plaintiffs request that Tucows be directed to:

Cease aiding or abetting use of or contributorily using Plaintiffs', LIFE STYLE FUTON, INC., and EASY FIT, INC., rights in their registered trademark, EASY FIT

SLIPCOVER, Reg. No. 2,706,591, for "Bedding and Furniture Coverings," including by immediate removal of any existing use of the term Easy Fit, EasyFit or variations thereof on any e-commerce selling portal, advertisement, communication to the public, on furniture coverings and their packaging and/or as a domain name or as part of a domain name, in relation to beddings and furniture coverings.

Plaintiffs' Proposed Preliminary Injunction Order does not include a request that Tucows transfer the disputed domains to Plaintiffs.

At minimum, Plaintiffs' demand that Tucows cease providing to Et Tahiri et al. "website building services," "retail solutions," and "global [domain] reseller solutions," so long as Et Tahiri et al. are, without authorization, using Plaintiffs' registered trademark on their business, e-commerce portals to in order to prevent them from deceiving the public that they are the Plaintiffs herein.

Not only did Tucows receive Plaintiffs' pre-lawsuit communications regarding its trademark rights, Tucows has now seen Et Tahiri's email to Plaintiffs, which is everything but a full-throated admission of non-willful trademark infringement. (Verified Complaint, Exhibit D). Therein Et Tahiri stated "i will transfer to you these two domain name easyfitslipcover.com and easyfitslipcover.co I have closed everything…I will give everything you asked for thanks." Moreover, Et Tahiri has not responded to this Motion or appeared before the Court.  On this record, Tucows' vehement insistence that it must not be enjoined from providing its web hosting and like services to the Et Tahiri parties appears incredulous. Even as to providing continued Domain Registrar services for Et Tahiri, Tucows would arguably be in violation of 15 U.S.C. 1114(2)(D)(iii), showing "bad faith intent to profit from such registration or maintenance of the domain name" after it has been alerted to Et Tahiri's infringing conduct, including Et Tahiri's

confession that he made a mistake, and his current failure to appear in Court to defend his conduct.

        **C.**     **Plaintiffs are the Putative Owners of the www.easyfitslipcovers.com Domains**

Tucows suggests that Plaintiffs do not actually own the domain names: www.easyfitcovers.com and www.easyfitslipcovers.com. But a more careful reading of the Lillian Nazginov Declaration should have apprised Tucows that Lillian and Arthur Nazginov registered these domain names for the benefit of their companies, the Plaintiffs herein.

        **D.**     **Tucows' Submissions Do Not Negate Plaintiffs' Showing of Irreparable Injury and Likelihood of Success on the Merits**

While insisting that it is a mere domain name Registrar with no real interest in the merits of the underlying lawsuit, Tucows, incongruently, presents to the Court "evidence" that Plaintiffs' EASY FIT SLIPCOVER trademark is invalid, and even if valid, not infringed by the activities of the Defendants herein. Tucows is wrong and, at the least, its "evidence" is irrelevant and insufficient hearsay evidence. Tucows fails to appreciate the fundamental fact that Plaintiffs' trademark was registered close to twenty years ago and has attained "incontestable" status. That means that the validity of the trademark can be challenged solely on two grounds. First, that the mark has become the "generic" name for the particular goods, e.g., Aspirin, Cellophane and the like. This is certainly not the case here. Plaintiffs are unaware of any product under the Sun that is named "Easy Fit". The second ground for invalidating an "incontestable" trademark is by presenting evidence that it was procured through some fraud. None exists or is even alleged by Tucows.

Furthermore, Tucows provided to the Court a naked list of trademark records that its counsel downloaded from the Patent and Trademark Office, and no more. Tucows did not provide actual certificates, nor current evidence of actual use of any of these marks in the

marketplace, nor evidence of members of the public confusing EASY FIT trademarks in the form of mistaken beliefs that a product purchased from one vendor is actually sourced from another, or even remotely similar, probative evidence that shows that the EASY FIT SLIPCOVERS mark herein is either invalid or not infringed by the Defendants' conduct described herein. In contrast, Plaintiffs have provided more than the needed "likelihood of confusion" evidence. They have made of record incontrovertible proof of actual confusion.

The record is clear that Tucows has not come close to cast doubts on Plaintiffs' strong showing that (1) they are likely to succeed on the merits; (2) they have and are suffering irreparable harm; (3) "the balance of hardships tips in their favor"; and (4) that "public interest would not be disserved" by issuing preliminary relief." *See CJ Products LLC v. Snuggly Plushez LLC,* 809 F. Supp. 2d 127, 141 (E.D.N.Y. 2011)(citing *Salinger v. Colting,* 607 F.3d 68, 80 (2d Cir. 2010)).

### III.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the motion for a preliminary injunction relative to the registered EASY FIT SLIPCOVER mark be granted.

Date: New York, New York  
      March 19, 2021

Respectfully submitted,

**OSTROLENK FABER LLP**

/s/ Max Moskowitz

Max Moskowitz  
Ariel Peikes  
845 Third Avenue  
New York, New York 10022  
Telephone: (212) 596-0500  
Facsimile: (212) 382-0888  
mmoskowitz@ostrolenk.com  
apeikes@ostrolenk.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2021, the foregoing document and its attachments were filed using the Court's ECF system and served on the following counsel by ECF and on certain parties as follows:

John B. Berryhill (*Pro Hac Vice* Pending) John B. Berryhill LLC 204 E. Chester Pike First Floor Suite 4 Ridley Park, PA 19078 (610) 565-5601 voice/fax john@johnberryhill.com

Michael D. Cilento, Esq. (MC2221) Brett E. Lewis, Esq. Lewis & Lin LLC 81 Prospect Street, Suite 8001 Brooklyn, NY 11201 (718) 243-9323 michael@iLawco.com brett@iLawco.com

*Attorneys for Defendants Tucows*

Ilyass Et Tahiri at: ilyass.ettahiri.20@gmail.com

Individual Defendant and alter ego of the Defendants: EASYFIT SLIPCOVER, LTD. and CABREXA, LLC,

_____/s/  Ariel S. Peikes_____